1

2

3

4

5

6

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 03, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

7 | LORETTA T.,

| No. 2:17-cv-00240-MKD

8 |         Plaintiff,

| REPORT AND
RECOMMENDATION TO GRANT
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND TO
DENY DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

9 |     vs.

10 | COMMISSIONER OF SOCIAL

11 | SECURITY,

| ECF Nos. 15, 16

12 |         Defendant.

13        BEFORE THE COURT on report and recommendation are the parties'

14 cross-motions for summary judgment. ECF Nos. 15, 16. The Court, having

15 reviewed the administrative record and the parties' briefing, is fully informed. For

16 the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF

17 No. 15) be granted and Defendant's Motion (ECF No. 16) be denied.

18                    **JURISDICTION**

19        The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

20

REPORT AND RECOMMENDATION - 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

REPORT AND RECOMMENDATION - 2

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

REPORT AND RECOMMENDATION - 3

1    If the claimant is not engaged in substantial gainful activity, the analysis

2  proceeds to step two.  At this step, the Commissioner considers the severity of the

3  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

4  "any impairment or combination of impairments which significantly limits [his or

5  her] physical or mental ability to do basic work activities," the analysis proceeds to

6  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

7  this severity threshold, however, the Commissioner must find that the claimant is

8  not disabled.  20 C.F.R. § 416.920(c).

9    At step three, the Commissioner compares the claimant's impairment to

10  severe impairments recognized by the Commissioner to be so severe as to preclude

11  a person from engaging in substantial gainful activity.  20 C.F.R. §

12  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13  enumerated impairments, the Commissioner must find the claimant disabled and

14  award benefits.  20 C.F.R. § 416.920(d).

15    If the severity of the claimant's impairment does not meet or exceed the

16  severity of the enumerated impairments, the Commissioner must pause to assess

17  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

18  defined generally as the claimant's ability to perform physical and mental work

19  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

20  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

REPORT AND RECOMMENDATION - 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

REPORT AND RECOMMENDATION - 5

1    numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

2    700 F.3d 386, 389 (9th Cir. 2012).

3                                    **ALJ'S FINDINGS**

4            Plaintiff filed an application for Title XVI supplemental security income

5    benefits on October 15, 2013, alleging an amended onset date of October 15, 2013.

6    Tr. 47, 182-87.  The application was denied initially, Tr. 129-33, and on

7    reconsideration, Tr. 140-42.  Plaintiff appeared at a hearing before an

8    administrative law judge (ALJ) on February 23, 2016.  Tr. 46-99.  On March 9,

9    2016, the ALJ denied Plaintiff's claim.  Tr. 20-36.

10           At step one of the sequential evaluation process, the ALJ found Plaintiff had

11   not engaged in substantial gainful activity since October 15, 2013.  Tr. 22.  At step

12   two, the ALJ found Plaintiff has the following severe impairments: low back pain,

13   borderline intellectual functioning, depression, anxiety, and personality disorder.

14   *Id.*  At step three, the ALJ found Plaintiff did not have an impairment or

15   combination of impairments that meets or medically equals the severity of a listed

16   impairment.  Tr. 28.  The ALJ then concluded Plaintiff had the RFC to perform

17   medium work with the following exceptions:

18           She can lift no more than 50 pounds occasionally and lift or carry 25 pounds
             frequently.  She can sit 6 hours, stand 6 hours, and/or walk 6 hours in an 8-
19           hour day with normal breaks.  She cannot climb ladders, ropes, or scaffolds,
             or be exposed to unprotected heights.  She can understand, remember, and
20           carry out simple, routine, repetitive work instructions.  She would do best in

REPORT AND RECOMMENDATION - 6

work settings not involving a lot of public activity, with no fast paced or strict production quota-type work settings.

Tr. 29.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 33.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as industrial cleaner, peeled potato inspector, photocopy machine operator, stuffer, and lampshade assembler.  Tr. 34-35.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from October 15, 2013 through March 9, 2016, the date of the ALJ's decision.  Tr. 35.

On May 5, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the credibility of Plaintiff's
   testimony;

REPORT AND RECOMMENDATION - 7

2. Whether the ALJ properly evaluated the medical opinion evidence; and

3. Whether the ALJ's step four finding was supported by substantial evidence.

ECF No. 15 at 9.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her subjective symptom claims. ECF No. 15 at 9-12. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

REPORT AND RECOMMENDATION - 8

1  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

2  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are

3  insufficient; rather, the ALJ must identify what testimony is not credible and what

4  evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81

5  F.3d 821, 834 (1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

6  ("[T]he ALJ must make a credibility determination with findings sufficiently

7  specific to permit the court to conclude that the ALJ did not arbitrarily discredit

8  claimant's testimony."). "The clear and convincing [evidence] standard is the most

9  demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

10  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

11  924 (9th Cir. 2002)).

12      The ALJ concluded that Plaintiff's medically determinable impairments

13  could reasonably be expected to cause her alleged symptoms, but that Plaintiff's

14  assertion of total disability was not supported by the weight of the evidence.  Tr.

15  30.

16      *1.  Lack of Supporting Medical Evidence*

17      The ALJ concluded the medical evidence did not support Plaintiff's

18  subjective symptom claims.  Tr. 30.  An ALJ may not discredit a claimant's pain

19  testimony and deny benefits solely because the degree of pain alleged is not

20  supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857

REPORT AND RECOMMENDATION - 9

(9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c). Here, the ALJ noted Plaintiff alleged that her back pain limited her ability to lift, stand, and walk, but that the medical evidence failed to corroborate these claims. Tr. 30; *see, e.g.,* Tr. 268 (objective imaging shows only mild results); Tr. 355 (no spine/back abnormalities observed). Plaintiff assigns error to the ALJ's conclusion, but fails to make any argument in support of this position. Therefore, Plaintiff has waived argument on the issue. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). The ALJ's conclusion is supported by substantial evidence.

### 2. Improvement with Treatment

The ALJ found Plaintiff's record of improvement with treatment undermined her subjective symptom claims. Tr. 31. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see Warre v. Comm'r of*

REPORT AND RECOMMENDATION - 10

*Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively

controlled with medication are not disabling for purposes of determining eligibility

for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d

1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a

claimant's complaints of debilitating pain or other severe limitations).  Plaintiff

testified to experiencing disabling depression.  Tr. 88.  However, the ALJ observed

that Plaintiff's conditions showed a record of good progress in treatment.  Tr. 31;

*see* Tr. 367 (Plaintiff reported improved sleep, energy, and independence); Tr. 507

(Plaintiff reported doing "really really good actually"); Tr. 512 (Plaintiff reported

good mood); Tr. 513-14 (same).  The ALJ's conclusion is supported by substantial

evidence.  Furthermore, Plaintiff fails to challenge this conclusion, thus argument

on this issue is waived.  *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at

1000.  This was a clear and convincing reason to discredit Plaintiff's symptom

testimony.

### 3.  Daily Activities

The ALJ concluded that Plaintiff's daily activities were inconsistent with the

level of impairment alleged.  Tr. 31.  A claimant's reported daily activities can

form the basis for an adverse credibility determination if they consist of activities

that contradict the claimant's "other testimony" or if those activities are

transferable to a work setting.  *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007);

REPORT AND RECOMMENDATION - 11

1   *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse

2   credibility finding "if a claimant is able to spend a substantial part of his day

3   engaged in pursuits involving the performance of physical functions that are

4   transferable to a work setting."). "While a claimant need not vegetate in a dark

5   room in order to be eligible for benefits, the ALJ may discredit a claimant's

6   testimony when the claimant reports participation in everyday activities indicating

7   capacities that are transferable to a work setting" or when activities "contradict

8   claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal

9   quotation marks and citations omitted).

10      Plaintiff testified that she could walk 15-20 minutes at a time, stand for 10-

11  15 minutes at a time, and lift no more than 10 pounds. Tr. 85-86. However, the

12  ALJ observed Plaintiff's daily activities included maintaining her apartment, doing

13  laundry, preparing meals, and grocery shopping. Tr. 492. Plaintiff reported

14  spending 30 minutes to an hour at a time on these activities. Tr. 222. Plaintiff also

15  reported pet sitting and walking dogs for over 36 hours per week. *Compare* Tr. 85

16  *with* Tr. 512, 524. The ALJ reasonably concluded that Plaintiff's activities were

17  inconsistent with her physical symptom testimony.

18      The ALJ also observed Plaintiff's daily activities did not support a

19  significant degree of mental limitations as Plaintiff alleged. Plaintiff reported

20  going to the library and to church regularly, and interacting with friends, which the

REPORT AND RECOMMENDATION - 12

1  ALJ concluded indicated she had the ability to interact socially.  Tr. 31; *see* Tr. 90,

2  92.  Plaintiff also testified that she watches movies for four to six hours per day,

3  reads, and crochets, which the ALJ concluded indicated she could sustain

4  concentration, persistence, and pace.  Tr. 31, 90-92.  The ALJ reasonably

5  concluded that these activities did not support the level of impairment alleged.  *See*

6  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  This was a clear

7  and convincing reason to discredit Plaintiff's symptom complaints.

8      *4. Work History*

9       The ALJ found Plaintiff's work history suggested a lack of credibility.  Tr.

10  31.  The claimant's work record is an appropriate consideration in weighing the

11  claimant's credibility.  *Thomas*, 278 F.3d at 958-59.  The ALJ noted that Plaintiff's

12  work history was limited prior to her alleged disability onset date, which caused

13  the ALJ to question whether Plaintiff's lack of employment was actually due to the

14  medical and mental health impairments alleged.  Tr. 31; *see* Tr. 195-96.  This was

15  a clear and convincing reason to discredit Plaintiff's symptom complaints.

16      *5. History of Concealing Information Regarding Ability to Work*

17       The ALJ discredited Plaintiff's subjective symptom testimony because of

18  Plaintiff's history of concealing information about her work and finances to obtain

19  benefits.  Tr. 31.  It was proper for the ALJ to consider this factor in making the

20  adverse credibility determination.  *Bunnell*, 947 F.2d at 346 ("So long as the

REPORT AND RECOMMENDATION - 13

1   adjudicator makes specific findings that are supported by the record, the

2   adjudicator may discredit the claimant's allegations based on … relevant character

3   evidence."); *see also Hardisty v. Astrue,* 592 F.3d 1072, 1080 (9th Cir. 2010);

4   *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007).  An ALJ may also

5   properly consider the issue of motivation in assessing credibility.  *Matney v.*

6   *Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *Tommasetti*, 533 F.3d at 1040

7   (finding an ALJ may draw reasonable inferences regarding a claimant's motivation

8   to work).  Here, the ALJ observed the record showed Plaintiff concealed her

9   income from dog walking and pet sitting from Washington State's Aged, Blind, or

10  Disabled program (ABD), stating that she did not intend to report this income

11  because "it's nice to have a backup … and I don't want to have to change my

12  income for housing every month."  Tr. 31 (citing Tr. 520, 537).  In conducting a

13  cost-benefit analysis of a potential move to California, Plaintiff suggested she

14  could work "under the table" in order to maintain SSI benefits.  Tr. 528.  Plaintiff

15  also expressed a lack of interest in working because her wages would be garnished.

16  Tr. 393.  The ALJ reasonably concluded, based on this record, that Plaintiff's

17  subjective testimony was less credible because of Plaintiff's history of concealing

18  her financial situation in order to obtain or retain benefits.

19      Plaintiff challenges the ALJ's finding, contending that Social Security

20  Ruling (SSR) 16-3p precludes considering a Plaintiff's general veracity or overall

REPORT AND RECOMMENDATION - 14

1  character for truthfulness.  ECF No. 15 at 11-12.  SSR 16-3p is not applicable here

2  because it became effective March 28, 2016, after the date of the ALJ's decision.

3  *See Garner v. Colvin*, 626 F. App'x 699, 701 (9th Cir. 2015) (unpublished).

4  Moreover, the evidence cited by the ALJ undermines Plaintiff's claims that she is

5  unable to work due to physical and mental limitations.  The ALJ reasonably relied

6  on Plaintiff's history of concealing her financial information to obtain benefits in

7  assessing the credibility of Plaintiff's symptoms complaints.

8      *6. Inconsistent Statements*

9          The ALJ discredited Plaintiff's symptom complaints because the record

10  contained inconsistent statements from Plaintiff.  Tr. 31.  In evaluating the

11  credibility of symptom testimony, the ALJ may utilize ordinary techniques of

12  credibility evaluation, including considering prior inconsistent statements.  *Smolen*

13  *v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).  In addition to the instances of

14  dishonesty articulated *supra*, the ALJ noted that in August 2015, Plaintiff reported

15  that CPS took her children away because she was unable to perform a urinalysis

16  because of her anxiety.  Tr. 31; *see* Tr. 492.  However, In December 2013, Plaintiff

17  reported CPS taking her children away due to there being a level 2 sex offender in

18  her home.  Tr. 31; *see* Tr. 349.  The ALJ reasonably concluded that this

19  inconsistent reporting undermined the credibility of Plaintiff's symptom testimony.

20

REPORT AND RECOMMENDATION - 15

1    The ALJ provided several clear and convincing reasons to discredit

2    Plaintiff's subjective symptom testimony.

3    **B. Medical Opinion Evidence**

4    Plaintiff challenges the ALJ's consideration of the medical opinions of

5    Debra Brown, Ph.D., and Kayleen Islam-Zwart, Ph.D.  ECF No. 15 at 12-16.

6    There are three types of physicians: "(1) those who treat the claimant

7    (treating physicians); (2) those who examine but do not treat the claimant

8    (examining physicians); and (3) those who neither examine nor treat the claimant

9    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

10   *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

11   Generally, a treating physician's opinion carries more weight than an examining

12   physician's, and an examining physician's opinion carries more weight than a

13   reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

14   to opinions that are explained than to those that are not, and to the opinions of

15   specialists concerning matters relating to their specialty over that of

16   nonspecialists."  *Id.* (citations omitted).

17   If a treating or examining physician's opinion is uncontradicted, the ALJ

18   may reject it only by offering "clear and convincing reasons that are supported by

19   substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

20   "However, the ALJ need not accept the opinion of any physician, including a

REPORT AND RECOMMENDATION - 16

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-

831).

Dr. Brown and Dr. Islam-Zwart both provided Washington State Department

of Social and Health Services (DSHS) evaluations for Plaintiff.  Tr. 279-86, 486-

93.  In evaluating these opinions, the ALJ concluded that DSHS opinions were

generally entitled to less weight than other medical opinions.  Tr. 33.

First, the ALJ found the DSHS opinions were entitled to little weight

because they "are usually, but not always," based on Plaintiff's self-reported

symptoms and complaints.  Tr. 33.  A physician's opinion may be rejected if it is

based on a claimant's subjective complaints which were properly discounted.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of

Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604.

However, when an opinion is not more heavily based on a patient's self-reports

than on clinical observations, there is no evidentiary basis for rejecting the opinion.

*Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-

REPORT AND RECOMMENDATION - 17

1200 (9th Cir. 2008). Here, however, the ALJ made no specific finding that the

medical sources relied on Plaintiff's self-reports, let alone a finding as to how

heavily either DSHS evaluator's opinion was based on Plaintiff's self-reporting.

Instead, the ALJ only observed generally that "DSHS evaluations are usually, but

not always, substantially based on the claimant's self-reported symptoms and

complaints." Tr. 33. Furthermore, both examiners did rely on objective findings

in forming their opinions. Dr. Brown conducted testing in support of her opinion,

and the ALJ assigned these test results significant weight. Tr. 33. Dr. Islam-

Zwart's report also includes test results from a mental status examination, Trail

Making Test, and Fifteen Item Memory Test. Tr. 490-93. Absent a specific

finding supported by substantial evidence that the medical sources relied on

Plaintiff's self-reports in formulating their opinions, this reason was not a specific

and legitimate reason to discredit the opinion.

Second, the ALJ discredited these opinions, concluding that DSHS

evaluations are conducted "for the purpose of determining the individual's

eligibility for state welfare assistance," and therefore "the individual has an

incentive to overstate symptoms and complaints." Tr. 33. "The purpose for which

medical reports are obtained does not provide a legitimate basis for rejecting

them." *Lester*, 81 F.3d at 832 (citing *Ratto v. Sec'y, Dept. of Health and Human

Servs.,* 839 F. Supp. 1415, 1426 (D. Or. 1993)). Although the Commissioner

REPORT AND RECOMMENDATION - 18

1    argues the ALJ's finding should be read together with Plaintiff's history of

2    concealing information while applying for benefits, this information is more

3    appropriately considered in assessing Plaintiff's symptom testimony than it is in

4    evaluating a medical opinion. *See supra*.  That Plaintiff sought DSHS evaluations

5    while applying for state benefits was not a specific and legitimate reason to

6    discredit these opinions.

7           Third, the ALJ also noted DSHS uses different definitions than those used in

8    the Social Security Act and Regulations.  *Id.*  The regulations provide that the

9    amount of an acceptable source's knowledge of Social Security disability programs

10   and their evidentiary requirements may be considered in evaluating an opinion,

11   regardless of the source of that understanding.  20 C.F.R. § 416.927(c).  Although

12   state agency disability rules may differ from Social Security Administration rules

13   regarding disability, it is not always apparent that the differences in rules affect a

14   particular physician's report without further analysis by the ALJ.  Here, the ALJ

15   failed to identify any relevant and specific definitions used in the evaluations that

16   are different from those relevant to the SSA disability determination.  There may

17   be situations where less weight should be assigned to a DSHS medical opinion

18   based on the differences in definitions and rules, but substantial evidence does not

19   support that finding here.  This is therefore not a specific and legitimate reason for

20   rejecting the opinions.

REPORT AND RECOMMENDATION - 19

1          Fourth, the ALJ discredited these opinions because the DSHS evaluators did

2   not have a treating relationship with Plaintiff.  Tr. 33.  The number of visits a

3   claimants has made to a particular provider is a relevant factor in assigning weight

4   to an opinion.  20 C.F.R. § 416.927(c).  However, the fact that these evaluators

5   examined Plaintiff one time is not a legally sufficient basis for rejecting the

6   opinion.  The regulations direct that all opinions, including the opinions of

7   examining providers, should be considered.  20 C.F.R. § 416.927(b), (c).  In

8   addition, the ALJ's reasoning is also inconsistent with the ALJ's decision to assign

9   great weight to Dr. Martin, who had no treating or examining relationship with

10  Plaintiff.  Tr. 32.  Thus, the fact that Dr. Brown and Dr. Islam-Zwart examined

11  Plaintiff one time is not a legitimate reason to discredit their opinions.

12          Fifth, the ALJ discredited the DSHS evaluations because DSHS opinions

13  "are usually completed by checking boxes and contain few objective findings in

14  support of the degree of limitation opined."  Tr. 33.  The Ninth Circuit has recently

15  held that the fact that an opinion is expressed on a check-the-box form does not

16  constitute a germane reason to discount the opinion of a non-acceptable medical

17  source.  *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017).  Accordingly, such

18  reasoning cannot meet the more exacting standards applied to acceptable medical

19  sources.  Furthermore, contrary to the ALJ's generalization, Dr. Brown did identify

20  objective findings through her psychological testing of Plaintiff, the results of

REPORT AND RECOMMENDATION - 20

1  which the ALJ assigned significant weight.  Tr. 33; *see* Tr. 284-86.  Dr. Islam-

2  Zwart similarly conducted psychological testing and reported her findings in a

3  narrative report.  Tr. 490-93.  This was not a specific and legitimate reason to

4  discredit these opinions.

5         Providing a blanket rejection of DSHS opinions is contrary to the

6  regulations which require that each medical source opinion be evaluated.  20

7  C.F.R. § 416.927(b), (c).  Although the ALJ provided some individualized

8  consideration for each opinion, the individualized reasoning articulated is

9  insufficient as discussed *infra*.

10        *1.  Dr. Islam-Zwart*

11        Dr. Islam-Zwart examined Plaintiff on August 27, 2015, diagnosed learning

12  disorder NOS, anxiety disorder NOS, somatoform disorder NOS, borderline

13  intellectual functioning, and personality disorder NOS, and opined Plaintiff's

14  impairments would case moderate limitations in her ability to understand,

15  remember, and persist in tasks by following detailed instructions; learn new tasks;

16  make simple work-related decisions; be aware of normal hazards and take

17  precautions; and ask simple questions or request assistance; and marked

18  impairments in her ability to perform activities within a schedule, maintain regular

19  attendance, and be punctual within customary tolerances without special

20  supervision; adapt to changes in a routine work setting; communicate and perform

REPORT AND RECOMMENDATION - 21

1  effectively in a work setting; and maintain appropriate behavior in a work setting.

2  Tr. 487-88.  The ALJ assigned this opinion little weight.  Tr. 33.  Because Dr.

3  Brown's opinion was contradicted by Dr. Martin, Tr. 68-69, the ALJ was required

4  to provide specific and legitimate reasons for rejecting the opinion.  *Bayliss*, 427

5  F.3d at 1216; *see also Widmark*, 454 F.3d at 1066-67.

6       In addition to the general reasons discussed *supra*, the ALJ discredited Dr.

7  Islam-Zwart's opinion, concluding it was not supported by her examination

8  findings.  Tr. 33.  The ALJ may properly reject a medical opinion if it is

9  inconsistent with the provider's own treatment notes.  *Tommasetti*, 533 F.3d at

10  1041.  Here, the ALJ concluded without explanation that Dr. Islam-Zwart's mental

11  status examination was within normal limits.  Tr. 33.  However, Dr. Islam-Zwart

12  marked four of the eight items on the mental status examination as not being

13  within normal limits.  Tr. 489.  Without further explanation of how Dr. Islam-

14  Zwart's examination results were normal, the ALJ's rejection of Dr. Islam-Zwart's

15  opinion is not supported by substantial evidence.  The undersigned recommends

16  that this matter be remanded for reconsideration of Dr. Islam-Zwart's opinion.

17       *2.  Dr. Brown*

18       Dr. Brown examined Plaintiff on September 4, 2013, diagnosed dysthymia

19  and borderline IQ, and opined through a DSHS evaluation form that Plaintiff's

20  impairments would cause moderate impairments in her ability to perform routine

REPORT AND RECOMMENDATION - 22

tasks without special supervision, adapt to changes in a routine work setting, make simple work related decisions, and maintain appropriate behavior in a work setting, and marked impairments in her ability to learn new tasks, communicate and perform effectively in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently.  Tr. 281-82.  The ALJ assigned this opinion little weight.  Tr. 33.  Because Dr. Brown's opinion was contradicted by Dr. Martin, Tr. 68-69, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion.  *Bayliss*, 427 F.3d at 1216; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006).

In addition to the reasons discussed *supra*, the ALJ discredited Dr. Brown's opinion because it was not supported by her examination findings.  Tr. 33.  The ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes.  *Tommasetti*, 533 F.3d at 1041.  Here, the ALJ found that Dr. Brown's working memory index finding was not supported by the corresponding test results, Tr. 33; *see* Tr. 65 (Dr. Martin's testimony that Dr. Brown's conclusion was not supported by the test results), and concluded without explanation that Plaintiff's mental status examination was largely normal.  Tr. 33.  Of the eight items measured on the mental status examination form, Dr. Brown identified four as not being within normal limits.  Tr. 283.  The ALJ failed to explain how these

1    results constituted an "otherwise normal" mental status examination.  Tr. 33.  The

2    ALJ's rejection of Dr. Brown's opinion is not supported by substantial evidence.

3    The undersigned recommends that this matter be remanded for reconsideration of

4    Dr. Brown's opinion.

5    **C. Remand**

6         Plaintiff urges this Court to remand for an immediate award of benefits.

7    ECF No. 15 at 16-17.  To do so, the Court must find that the record has been fully

8    developed and further administrative proceedings would not be useful.  *Garrison*,

9    759 F.3d at 1019-20; *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396,

10   1399 (9th Cir. 1988).  But where there are outstanding issues that must be resolved

11   before a determination can be made, and it is not clear from the record that the ALJ

12   would be required to find a claimant disabled if all the evidence were properly

13   evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

14   (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

15        Here, it is not clear from the record that the ALJ would be required to find

16   Plaintiff disabled if all the evidence were properly evaluated.  Even if the ALJ

17   were to fully credit Dr. Islam-Zwart and Dr. Brown's opinions, the medical

18   evidence would still present outstanding conflicts for the ALJ to resolve.

19   Therefore, further proceedings are necessary for the ALJ to properly weigh the

20   medical opinion evidence in the record and conduct a new sequential evaluation

REPORT AND RECOMMENDATION - 24

1  accordingly.  For this reason, is the undersigned recommends that this matter be

2  remanded for the ALJ to reconsider the medical evidence.

**CONCLUSION**

4       Having reviewed the record and the ALJ's findings, this Court concludes the

5  ALJ's decision is not supported by substantial evidence and free of harmful legal

6  error.  Accordingly, **IT IS HEREBY RECOMMENDED**:

7       1. Plaintiff's Motion for Summary Judgment, ECF No. 15, be GRANTED.

8       2. Defendant's Motion for Summary Judgment, ECF No. 16, be DENIED.

9       3. The Court enter JUDGMENT in favor of Plaintiff REVERSING and

10 REMANDING the matter to the Commissioner of Social Security for further

11 proceedings consistent with this recommendation pursuant to sentence four of 42

12 U.S.C. § 405(g).

**OBJECTIONS**

14      Any party may object to a magistrate judge's proposed findings,

15 recommendations or report within **fourteen (14)** days following service with a

16 copy thereof.  Such party shall file written objections with the Clerk of the Court

17 and serve objections on all parties, specifically identifying the portions to which

18 objection is being made, and the basis therefor.  Any response to the objection

19 shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

20

REPORT AND RECOMMENDATION - 25

1  directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of

2  service.

3      A district judge will make a *de novo* determination of those portions to

4  which objection is made and may accept, reject or modify the magistrate judge's

5  determination.  The judge need not conduct a new hearing or hear arguments and

6  may consider the magistrate judge's record and make an independent

7  determination thereon.  The judge may, but is not required to, accept or consider

8  additional evidence, or may recommit the matter to the magistrate judge with

9  instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

10  § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern

11  District of Washington.

12      A magistrate judge's recommendation cannot be appealed to a court of

13  appeals; only the district judge's order or judgment can be appealed.

14      The District Court Executive is directed to enter this Report and

15  Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

16  **MANAGEMENT DEADLINE ACCORDINGLY.**

17      DATED July 3, 2018.

18                    *s/Mary K. Dimke*
                      MARY K. DIMKE
19               UNITED STATES MAGISTRATE JUDGE

20

REPORT AND RECOMMENDATION - 26